IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**CHARLES DEWAYNE WALTHER,**
 Petitioner,

vs.                 3:04CV237/MCR/MD

**DONALD BAUKNECHT,**
 Respondent,
_____/

### REPORT AND RECOMMENDATION

This matter is before the court upon a petition for writ of habeas corpus (doc. 1) filed pursuant to 28 U.S.C. § 2241. The respondents filed an answer (doc. 9), and petitioner filed a response (doc. 15).

Petitioner is a federal prisoner convicted in this court of conspiracy to manufacture and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He is currently housed at the Federal Prison Camp, Pensacola, Florida.[1] This case involves a dispute over petitioner's entitlement to a discretionary sentence reduction for participation in an approved Residential Drug Abuse Program ("RDAP") under 18 U.S.C. § 3621(e)(2).

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. §

---

[1] After pleading guilty to conspiracy to manufacture and possess with intent to distribute 500 grams or more of methamphetamine in Case 3:01cr107/LAC, defendant was sentenced to a term of 96 months imprisonment.

3621(b).  If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§3621(e)(2)(B).  Thus, §3621(e)(2)(B) provides an incentive for inmates to enroll in and complete the treatment program.  However, the statute makes <u>permissive</u> the BOP's determination to grant a reduction in sentence upon an inmate's successful completion of an RDAP.  The BOP's statutory grant of discretion is limited in two respects: first, only inmates convicted of "non-violent offenses" are considered eligible for the sentence reduction; and second, the sentence reduction may not exceed one year. *See Sesler v. Pitzer*, 926 F. Supp. 130, 132 (D. Minn. 1996), *aff'd*, 110 F. 3d 569 (8th Cir.), *cert. denied*, 522 U.S. 877, 118 S. Ct. 197, 139 L.Ed.2d 135 (1997).  "The absence of a statutory definition of 'nonviolent offense' in § 3621(e)(2)(B) indicates that Congress intended the BOP to determine those offenses that qualify as nonviolent offenses and those offenses to be excluded." *Cook v. Wiley*, 208 F.3d 1314, 1318 (11th Cir. 2000) (quotations omitted).  This statute "authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who successfully completed a treatment program, *based on criteria to be established and uniformly applied by the [BOP]*. *Id*. at 1318-1319 (Quoting H.R. Rep. NO. 103-320, 103rd Cong., 1st Sess. (1993) (substitutions and emphasis in original)).  Even statutorily eligibility does not guarantee the reduction due to the permissive language in the statute. *Id*. at 1319.   Additional regulations guiding the discretionary implementation of the RDAP have been promulgated and are codified in BOP Program Statements and Title 28 C.F.R. § 550.  See, e.g. Program Statement 5330.10; 5162.04.

Inmates whose offenses involve the carrying, possession, or use of "a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)" are precluded from the benefit of early release.  Program

Statement 5330.10 at ch. 6, p.1; 5162.04, ¶ 7. This categorical exclusion is identified as "an exercise of the discretion vested in the director." Program Statement 5162.04, ¶ 7. The petitioner's enhancement for possession of a substance that created a substantial risk of harm to human life or the environment, in this case anhydrous ammonia, is what the BOP maintains precludes him from eligibility for the sentence reduction. Petitioner contends that the BOP has misinterpreted the definition of "explosive material" contained within title 18 U.S.C. § 841 to deny him a sentence reduction after his successful completion of the RDAP program.

Title 18 U.S.C. § 841(c) defines "explosive materials" as explosives, blasting agents, and detonators. "Explosives" are further defined in part as "any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion." 18 U.S.C. § 841(d). The term "includes but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters." *Id.* As noted above, petitioner's offense conduct included possession and transport of anhydrous ammonia.[2] He now argues that in his case, the alleged

---

[2]Paragraph 35 of the PSR states in part:

> According to the Florida Department of Environmental Protection, anhydrous ammonia is highly volatile and could create serious injury to human life if it exploded. Therefore, the mere transportation of this hazardous substance created serious risk to others, either on the roadway or at the location where the "cooks" (part of the "cook" where anhydrous ammonia injected) took place. As the anhydrous ammonia and the ether from the starter fluid was not properly disposed of, this offense created a serious risk of harm to the environment due to release of hazardous or toxic substances into the environment. After the "cooks" in the wood areas, empty cans of starter fluid (containing ether) were thrown into nearby streams or were merely dumped or thrown into the woods. As human life and the environment were placed in substantial danger, a three level adjustment is warranted.

(Exhibit to petition, doc. 1).

The court conducted independent research to educate itself about the character and properties of anhydrous ammonia. Although anhydrous ammonia itself is not flammable, ammonia vapors may be. See Anhydrous Ammonia Home Page, http://www.rmtech.net/Anhydrous%20Ammonia.htm, (explaining that anhydrous ammonia is classified by the DOT as a non-flammable gas, but noting that ammonia vapors are flammable over a narrow range of 16% to 25% by volume in air with a strong

"explosive" in question was possessed and used as a precursor chemical to methamphetamine, rather with an intent to detonate, and that therefore he should not be precluded from receiving the sentence reduction. The fact that the anhydrous ammonia may have explosive tendencies if improperly transported was incidental and irrelevant to the reason petitioner and his co-defendants used it.

The Program Statements specifically provide that individuals whose offense conduct involves violations of 21 U.S.C. § 841(a)(1) and 846 may or may not be precluded from early release. Program Statement 5162.04 ¶ 7.b. For such individuals, BOP staff are directed to determine whether the sentencing court made a finding that the inmate's conduct involved force by reviewing the section of the inmate's PSR pertaining to "Specific Offense Characteristic" ("SOC"). P.S. 5162.04 ¶ 7.b. By implication, it would appear that examination of the SOC would be appropriate to determine whether the inmate possessed, carried or used explosives. The PSR reflects that petitioner received a three level upward adjustment pursuant to § 2D1.1(b)(5)(B)[3] over defense objection because either the transportation or

---

ignition source). See also http://www.mda.state.mn.us/appd/nh3/aa_lab.pdf (characterizing anhydrous ammonia as non-flammable, liquefied gas)). Special tanks must be used to safely transport the substance, because "[d]ue to the unique chemical properties of anhydrous ammonia, it can exert the same pressure as a fully inflated car tire when it is placed in a closed container at 30 F. When anhydrous ammonia is placed in a container not designed to withstand this pressure, *the risk of explosion is great*." http://ohioline.osu.edu/aex-fact/0594-1.html. (Emphasis added). See also http://www.epa.gov/region08/community_resources/ppt/pptnews/pptspring00.pdf (pure anhydrous ammonia vapors can become an explosion hazard when in a confined space at concentrations between 16% and 25 % by volume); http://www.fao.org/DOCREP/005/Y1936E/y1936e0f.htm ( anhydrous ammonia is toxic and explosive, so pressure containers are required for transport and storage);http://www.northwestsignal.net/news.html (there is a threat of explosion if anhydrous ammonia is placed in improper containers);but see http://www.agrium.com/uploads/Anhydrous ammonia.pdf (Anhydrous ammonia is a slightly flammable liquid. It is not explosive. Site does not address transport of the substance). Another site, Using Anhydrous Ammonia Safely on the Farm, http://www.extension.umn.edu/distribution/cropsystems/DC2326.html, notes that it is one of the most potentially dangerous chemicals used in agriculture, but neither explosiveness nor volatility are identified as characteristics of the substance.

[3]This section, now section 2D1.1(b)(6)(B), provides If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to (I) human life other than a life described in subdivision (c); or (II) the environment, increase by 3 levels. If the resulting offense level is less than level 27, increase to level 27.

improper disposal of anhydrous ammonia could place "human life and the environment ... in substantial danger" due to its "highly volatile" nature. (PSR ¶ 35). Thus, although the anhydrous ammonia was not chosen or employed by petitioner as part of the offense conduct *because of* its volatile nature, this was taken into account in determining the petitioner's sentence.

The government argues that pursuant to *Lopez v. Davis* 531 U.S. 230, 243, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) the BOP need not consider the specific factual details of each inmate's case prior to precluding the inmate from early release. *Lopez* held that the BOP may categorically exclude inmates from early release without case by case consideration of the facts underlying their convictions. 531 U.S. at 243, 121 S.Ct. 723.  The alternative, case-by-case decision making in thousands of cases each year, "could invite favoritism, disunity and inconsistency." *Id.* 531 U.S. at 244, 121 S.Ct. at 724. The government appears to argue that the "categoric denial" is appropriate based on the fact that the defendant's sentence was enhanced pursuant to § 2D1.1(b)(5)(B), U.S.S.G. because the offense conduct was found to have created a "substantial risk of harm to . . . human life," and therefore the BOP is not required to look any more closely at the offense conduct than that.

Petitioner's argument is, in essence, regardless of whether the anhydrous ammonia could be used as an explosive, because that was clearly not the intent in his case, he should not be precluded from receiving the benefit of the sentence reduction after completing the RDAP program.  Arguably,  grouping of the category "explosives" with "a firearm or other dangerous weapon" in the Program Statement would suggest that the reference is to situations involving the use of explosives as weapons rather than an incidental means to a different end. The Program Statement fails to take into account that even substances that may be considered explosives, may have multiple purposes.[4]

---

[4]Anhydrous ammonia is also a widely used source of nitrogen fertilizer. See, e.g. http://www.extension.umn.edu/distribution/cropsystems/DC2326.html.

*Case No: 3:04cv237/MCR/MD*


**This is a difficult case because the logic of petitioner's position has appeal. The parties have not cited and this court has not found any cases in which an individual in a methamphetamine conspiracy was denied benefit of the RDAP program due to possession of anhydrous ammonia. However, the Supreme Court has clearly approved the BOP's use of categorical exclusions. The BOP categorically excluded petitioner in this case based on application of the enhancement relating to harm to human life or the environment. Underlying this enhancement was the petitioner's possession of anhydrous ammonia, which, according to some sources, is highly volatile and has explosive tendencies if improperly stored or transported. *Lopez* does not require the BOP to look even further into the facts of the case to analyze the reason for an offender's possession of explosive materials. Therefore, the BOP's decision to deny the petitioner the one year sentence reduction was within its discretion, and he is not entitled to relief.**

**To the extent that petitioner raises a Due Process claim, his claim fails. In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment. *Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir. 2000) (citing *American Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999)). The Supreme Court has held that a prisoner has "no constitutional or inherent right" in being released before the expiration of a valid sentence. *Id.* (Citing *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)). More particularly, the Court stated that if the relevant statute, such as the one in this case, "places no substantive limitations on official discretion" in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated. *Id.* (Citing *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); see also *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) (concluding no liberty interest arose from possibility of discretionary grant of incentive good time)). The *Cook* court, when confronted with the identical question, notes that § 3621(e)(2)(B) provides only that the BOP "may"**

grant a reduction in sentence to a prisoner "convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2)(B).  The Eleventh Circuit concluded that "because the § 3621(e)(2)(B) sentence reduction is left to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest."  *Id.* at 1323 (citing *Olim*, 461 U.S. at 249, 103 S.Ct. at 1747; *Venegas*, 126 F.3d at 765 ("The loss of the mere opportunity to be considered for discretionary early release [under § 3621(e)(2)(B) ] is too speculative to constitute a deprivation of a constitutionally protected liberty interest.")).  Therefore, as in *Cook*, the BOP's refusal to afford the petitioner a reduction in sentence did not violate the Due Process Clause.

Based on the foregoing, it is respectfully RECOMMENDED:

The petition for writ of habeas corpus (doc. 1) be **DENIED**.

At Pensacola, Florida, this 11th day of April, 2005.

/s/ *Miles Davis*
    MILES DAVIS
    UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cv237/MCR/MD*